UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X   Docket No. 21-cv-10795
MICHELE JAMES,

                Plaintiff,                                             **COMPLAINT**

-*against*-

                                     *PLAINTIFF DEMANDS*
                                     *A TRIAL BY JURY*

PERNOD RICARD USA, LLC

                Defendant.
---------------------------------------------------------------------X

      Plaintiff MICHELE JAMES ("Plaintiff") by and through her attorney, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. This is a civil action based upon Defendant's violations of Plaintiff's rights guaranteed to her by: (i) **Title VII of the Civil Rights Act of 1964,** as amended ("Title VII"); (ii) **Section 1981 of the Civil Rights Act of 1866** ("Section 1981"); (iii) the **New York State Human Rights Law**, New York State Executive Law, § 296 et seq. ("NYSHRL"); (iv) the **New York City Human Rights Law**, New York City Administrative Code § 8-107 et seq. ("NYCHRL"); and (v) any other claim(s) that can be inferred from the facts set forth herein.

2. Plaintiff seeks redress for the injuries she has suffered as a result of her employer's **discrimination and retaliation** solely on the basis of her race (Black).

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is proper under 28 U.S.C. §§1331 and 1343.

4. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state

law pursuant to 28 U.S.C. §1367.

5. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

6. Plaintiff timely filed a complaint, upon which this Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue from the EEOC, dated October 11, 2021, with respect to the instant charges of discrimination.  A copy of the Notice is annexed to this Complaint.

8. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

9. Prior to the commencement of this action, plaintiff served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York on December 16, 2021, in accordance with N.Y.C. Admin. Code §8-502(c).

## PARTIES

10. Plaintiff MICHELE JAMES ("Plaintiff") is a resident of the State of New York, County of New York and a Black woman.

11. At all relevant times herein, Plaintiff was an employee of Defendant PERNOD RICARD USA, LLC ("Defendant") at their office located at 250 Park Avenue, New York, New York 10177 within the meaning of the relevant statutes.

12. At all times relevant, Defendant was and is a Delaware corporation registered to do business in the State of New York.

13. Defendant at all relevant times herein was an employer within the meaning of the relevant statutes.

## FACTUAL ALLEGATIONS

14. Defendant is a multinational corporation engaged in the manufacturing and sale of alcohol and spirits.

15. In or around October 2015, Plaintiff began working for Defendant as a Senior Manager. In that position, Plaintiff earns an annual salary of $165,000 and 15%-20% bonuses annually.

16. Plaintiff's work performance has always met or exceeded Defendant's reasonable expectations. According to Plaintiff's last two annual reviews, Plaintiff exceeded expectations in role with Defendant.

17. Throughout her employment with Defendant, Plaintiff has been subjected to a workplace that systematically denies Black employees career development opportunities. Black employees of Defendant must prove themselves beyond what is expected of other employees although they are often more qualified than their non-Black peers.

18. In or around October 2015, Plaintiff was hired by Defendant as a Senior Manager after working in the higher ranked position of Director with PepsiCo, she was told that she could not assume a Director position with Defendant because only one Director position was available within the company's structure within the Insights function. The Director position was occupied by Mark Barabell ("Barabell") prior to his retirement. As a result, Plaintiff assumed all of Barbell's responsibilities upon his retirement.

19. Shortly after joining the company, Plaintiff learned that she was, in fact, more experienced from an Insights perspective than the Director to whom she reported. Namely, her insights experience from working on Colgate Palmolive and Pepsico. Plaintiff also had more

responsibility and experience than the other Senior Insights Manager, Stacey Newman, a white woman.

20. During one of various reorganizations in 2015, Plaintiff was made the lead for all consumer research for the United States market with only one direct report for support. A separate group of Consumer Planners (a Vice President, a Director, a Senior Manager, and two Managers) was created from the original Insights team to lead the roll out of a McKinsey Consumer Division Journey ("CDJ") initiative across the portfolio. Moreover, at least four to five McKinsey consultants supported the team full-time. In Contrast, Plaintiff was a part of a team of two and was expected to cover all of the research for the US Portfolio, including Best Practices/Center of Excellence.

21. Plaintiff was tasked with an impossible role that was set up for failure. This has consistently been the case throughout her employment with Defendant.

22. Throughout her employment with Defendant, Plaintiff repeatedly asked for additional support to successfully fulfill her roles within the company.

23. Plaintiff was also forced to endure racial slights. In a 2017 meeting, senior level executive, Julien Hemard, mimicked stereotypical Black speech patterns in a meeting attended by Plaintiff. Plaintiff was humiliated and reported the incident to Human Resources (HR) when she was interviewed during an investigation of a colleague's complaints of racial discrimination. Plaintiff has participated in two such investigations while employed by Defendant.

24. A few years ago in 2017, when Plaintiff identified issues with a marketing research product that was being developed, a function of her job, Plaintiff's Manager, Melvina El Grably, told her that she had been labeled a troublemaker and that Florence Rainsard ("Rainsard"),

Global Pernod Ricard Head of Insights for Defendant called her "aggressive." Plaintiff was humiliated by this stereotypical label commonly deployed against Black women.

25. Subsequently, Rainsard and Jane Kearney ("Kearney"), Director, began to attack Plaintiff in emails. Specifically, Rainsard told Plaintiff via e-mail that she could not be trusted and Kearney would repeatedly contradict Plaintiff via e-mail and imply that she was incompetent and inappropriately managing the project. When Plaintiff complained to HR about her treatment, acknowledged that other employees of color had reported similar issues. However, no action was ever taken.

26. In 2019, Defendant hired Inna Kuvich ("Kuvich"), a white woman, for a position comparable to Plaintiff although she had considerably less experience than Plaintiff. In contrast to Plaintiff, Kuvich was afforded a full-time Manager/Consultant to support her.

27. In 2021, two years after she was hired, Kuvich was promoted to a Director position while Plaintiff, despite her skills and expertise, continued to languish in the Senior Manager position.

28. In the summer of 2020, when Plaintiff inquired about the Open Insights Director position that had been created, Mary Beth Jowers ("Jowers"), the head of Plaintiff's group, told her "Sorry but I do not see you in that position." At that point, Jowers had only been working with Plaintiff for approximately three to four months. Instead of being promoted, another reporting layer was put above Plaintiff although she had previously been working autonomously.

29. Instead of opportunities for growth in 2021, Plaintiff was offered lateral moves, such as Pod 3 brands, where she would take on more work and responsibility with no additional compensation.

30. Plaintiff was also confronted with more racial slights in the workplace. In January 2021, Plaintiff was shocked to see a finished advertisement for Absolut Vodka, one of Defendant's brands, depicting historically racist imagery, specifically a Black woman with a watermelon smile and backdrop of "jungle" music and then another image of a Black man with twinkling teeth. When Defendant's racially diverse Cultural/Brand Council ("Council") expressed their concerns about the advertisement, the Marketing team accused the Council of being overly sensitive and asked if they could reconsider their stance on the ad.

31. During a reorganization of the Marketing Department in February 2021, three positions held by Black employees were eliminated. Defendant offered those employees positions within the newly formed Multicultural Marketing group that were essentially demotions.

32. Meanwhile, white women were overwhelmingly promoted into positions for which they were barely, if at all, qualified. The same opportunities to occupy positions beyond their qualifications were never afforded to Black employees. On the contrary, Black employees were expected to prove themselves in lateral moves or, in some cases, after being demoted into lower-level positions.

33. In January 2021, Plaintiff expressed her continuing concern that there was no career path for her within Defendant's organization despite her desire to get to the next level. Plaintiff continued to receive vague responses to her concerns.

34. In February 2021, Plaintiff's direct manager, Anna Estlund ("Estlund"), presented Plaintiff with what she referred to as "an excellent opportunity" for her from HR. In fact, it was a 360° review. When Plaintiff asked why she was now being offered this, no clear response was offered and Plaintiff was referred to HR for a discussion on February 12, 2021.

35. During that meeting with HR, Plaintiff expressed concerns regarding inequitable treatment of Black employees and the fact that Plaintiff was being offered yet another lateral move. The move would require Plaintiff to take on more work without additional compensation. As a result, no investigation was launched to address Plaintiff's concerns.

36. In or around April 2021, Jowers, in an attempt to further minimize Plaintiff's experience and competency, proposed that Plaintiff take another position completely outside of the Consumer Insights and Strategy Division. Upon information and belief this was another attempt to allow Plaintiff to make lateral moves within the company instead of addressing her concerns regarding Defendant's lack of career advancement.

37. In May 2021, Dany Penn ("Penn"), an Asian American woman, was hired at Plaintiff's level without meeting the qualifications of the job description for the position she assumed. To add insult to injury, Estlund, admitted to Plaintiff that Penn would need substantial support and training to get up to speed.

38. On July 21, 2021, a recent new hire, Devaunshi Mahadevia ("Mahadevia"), Martell Cognac Brand Director, told Plaintiff that they had gotten off to a wrong start and that she was hoping that in the future that Plaintiff would push back less and "have her back." Plaintiff was taken aback and assured Mahadevia that any comments she had made were her sharing her perspective and experience.

39. Upon information and belief, Mahadevia was displeased with Plaintiff due to Plaintiff's previous disagreement on changes Mahadevia was suggesting for a Martell project.

40. On July 28, 2021, Matt Doyle ("Doyle") from HR asked Plaintiff to informally discuss a comment that he heard from Mahadevia. Mahadevia had accused Plaintiff of pushing back too much because Mahadevia was not Black. Mahadevia claimed that Plaintiff felt that a

Black person should have taken the role instead of Mahadevia, who is of South Asian descent. Plaintiff was shocked as she had an excellent working relationship with the white woman who had previously occupied Mahadevia's role.

41. Plaintiff relayed the details of her July 21st conversation with Mahadevia and told Doyle she believed this was another instance of a Black person being accused without basis and assumed to be wrongdoer. Doyle replied by admitting that Defendant "needed to do better."

42. On August 24, 2021, Plaintiff e-mailed Jowers, Kuvich, Vivek Narasimhan, ("Narasimhan"), Senior Principal at Sharma Strategy Group, and Vishal Sharma ("Sharma"), Managing Principal at Sharma Strategy Group, expressing her concerns with the typing tool interpretation, which expressly targeted the African American consumers differently than other ethnic groups. In response, Jowers stated that one demographic does not have a unique set of needs. However, Sharma further responded that African Americans do have a distinct and unique set of needs.

43. At all times relevant, Sharma Strategy Group was an outside consulting firm retained by Defendant in 2020 to consult on projects.

44. Plaintiff further responded on August 25th e-mail explaining her dissatisfaction with Sharma's response and specifically listed her reasons why. Plaintiff further explained that during her tenure with PepsiCo and Defendant, this was the first time she has seen the disparity between African Americans and non-African Americans being used as a defining variable in a beverage segmentation and requested that Sharma connect with Jowers to clarify her point of view on the issue. To date, Plaintiff has not received a response addressing her concerns.

45. This was yet another disturbing instance of Plaintiff being portrayed as "the angry Black woman" for merely expressing an opinion, a function of her job.

46. Bias against Black and non-white Latinx employees is rampant in Defendant's organization even while non-Black employees, including white and Asian employees, are treated advantageously. The disparate treatment has negatively impacted Plaintiff's well-being and ability to do her job. Plaintiff has been compelled to seek medical treatment for the anxiety induced by Defendant's discriminatory workplace.

47. **<u>Defendant's actions and conduct were intentional and intended to harm Plaintiff</u>**.

48. Plaintiff would not have faced disparate treatment but for her race.

49. As a result of Defendant's actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed.

50. As a result of the Defendant's discriminatory and intolerable treatment of Plaintiff, she suffered severe emotional distress.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered, and will continue to suffer, the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

52. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against the Defendant.

**FIRST CAUSE OF ACTION**
*Race Discrimination in Violation of Title VII*

53. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54. 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, sex, or national origin[.] (emphasis added)

55. As described above, Defendant discriminated against Plaintiff on the basis of her race, in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment and subjecting Plaintiff to disparate treatment based on her race.

56. As a result of Defendant's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

57. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
*Retaliation in Violation of Title VII*

58. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59. 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

[T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an

investigation, proceeding, or hearing under this subchapter.

60. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding discrimination based on Plaintiff's race.

61. As described above, after Plaintiff engaged in activity protected by Title VII, Defendant took adverse actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

62. As a result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

63. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
*Race Discrimination in Violation of Section 1981*

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. 42 U.S.C. § 1981 states in relevant part as follows:

    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

66. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of her race (Black).

11

67. Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions and loss of employment due to her race.

### FOURTH CAUSE OF ACTION
*Retaliation in Violation of Section 1981*

68. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

69. By the acts and practices described above, Defendant retaliated against Plaintiff for her opposition to unlawful discrimination under 42 U.S.C. §1981.

70. Defendant acted with malice and/or reckless indifference to Plaintiff statutorily protected rights.

71. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

### FIFTH CAUSE OF ACTION
*Discrimination in Violation of the NYSHRL*

72. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

73. New York State Executive Law §296(1)(a) provides that:

    It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

74. As described above, Defendant discriminated against Plaintiff on the basis of her race, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, based on Plaintiff's race.

75. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

76. As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

77. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
*Retaliation in Violation of the NYSHRL*

78. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

79. New York State Executive Law § 296(7) provides that:

    It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she filed a complaint, testified, or assisted in any proceeding under this article.

80. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding Defendant's discrimination based on Plaintiff's race.

81. As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendant took adverse actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

82. As a result of Defendant's retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional

distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

83. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
*Discrimination in Violation of the NYCHRL*

84. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

85. The Administrative Code of City of New York § 8-107(1)(a) provides that

> It shall be an unlawful discriminatory practice: for an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service or alienage or citizenship status of any person... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

86. As described above, Defendant discriminated against Plaintiff on the basis of her race in violation of the NYCHRL by, including but not limited to, subjecting her to disparate working conditions and denying her the opportunity to work in an employment setting free of unlawful discrimination and harassment.

87. As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

88. As a result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress,

including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

89. Defendant's unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

### EIGHTH CAUSE OF ACTION
*Retaliation in Violation of the NYCHRL*

90. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

91. The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice for an employer "to retaliate or discriminate in any manner against any person because such person has opposed any practices forbidden under this chapter…."

92. As described above, Plaintiff engaged in protected activities, including making an internal complaint regarding discrimination based on Plaintiff's race.

93. As described above, after Plaintiff engaged in activity protected by the NYCHRL, Defendant took adverse actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

94. As a result of Defendant's retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for

which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

95. Defendant's unlawful discriminatory actions constitute violations of the NYCHRL that amount to willful or wanton negligence, recklessness, and involve a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages.

## JURY DEMAND

96. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, Section 1981, NYSHRL, and NYCHRL in that Defendant discriminated against Plaintiff on the basis of her race and retaliated against Plaintiff for engaging in protected activity;

B. Awarding damages to Plaintiff for all damages resulting from Defendant's unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's state law claims;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the

action; and

G.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: Garden City, New York
       December 16, 2021

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

By:     /s/ Marjorie Mesidor
       Marjorie Mesidor
       *Attorneys for Plaintiff*
       585 Stewart Avenue, Suite 410
       Garden City, New York 11530
       T: (212) 248-7431
       F: (212) 901-2107
       mmesidor@tpglaws.com