```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :    21cv10795 (DLC)
MICHELE JAMES,                          :
                                        :
                    Plaintiff,          :    OPINION AND ORDER
                                        :
               -v-                      :
                                        :
PERNOD RICARD USA, LLC,                 :
                                        :
                    Defendant.          :
                                        :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Phillips & Associates, PLLC
Marjorie Mesidor
Joseph Myers
585 Stewart Avenue, Suite 410
Garden City, NY 11530

For the defendant:
Epstein Becker & Green
Lauri F. Rasnick
Dana N. Berber
875 Third Avenue
New York, NY 10022

DENISE COTE, District Judge:

Michele James has sued her former employer Pernod Ricard USA, LLC ("Pernod"), claiming that it discriminated against her when it failed to promote her in 2020 to the position of Director. Because James did not apply for the position and has not otherwise offered evidence of discrimination in connection with Pernod's appointment of a Director, Pernod's motion for summary judgment is granted.

## Background

The following facts are taken from the evidence submitted in connection with the summary judgment motion. The facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

James, an African American woman, worked at Pernod from 2015 to 2021 in the marketing department. Pernod is a wine and spirits company that markets and sells beverages from brands including Jameson, Martell, and Absolut. Pernod's marketing department includes a Consumer Insights ("Insights") team. In September 2015, Pernod hired James as a Senior Manager within Insights.

Prior to being hired at Pernod, James had worked at PepsiCo, where she supervised one other person. A few months before leaving PepsiCo, she also supervised two additional employees.

James's performance reviews at Pernod in 2016, 2017, and 2018 were generally positive. In 2019, James was rated by her manager as "exceeds expectations."

In March 2020, Pernod hired Mary Beth Jowers as a Vice President to lead a newly created Portfolio Strategy and Insights Team. At this time, James was the Insights Senior Manager for Power Brands, which included Jameson, Martell, and the Agaves.

In the summer of 2020, Jowers decided to create two new Director-level positions: Director of Media and Director of Insights. On June 17, 2020, the Director of Insights job was posted on Pernod's intranet and externally. All employees were able to apply for the role.

The main responsibilities of the position were described as including:

- Lead and develop the Insights team, including scoping roles and managing organizational priorities. A key emphasis will be on upskilling the organization and mentorship.
- Establish a mid-and-long-term learning agenda and budget to support the transformation agenda inside [Pernod]. This will have a significant component involving media planning, portfolio strategy and brand storytelling
- Directly support a limited number of high-priority strategy projects (e.g. M&A activities, media thresholds)
- Oversee norms and reporting on innovation and media, ensuring that success criteria are represented correctly, teams have established correct, KPIs, etc.
- Establish a shopper/customer insights practice, which complements the existing customer analytics group.
- Key thought leader insight the global [Pernod] insights community. Manage the relationship with HQ Insights COE

Under "Experience/Background," the posting stated:

10+ years of business experience, with significant experience in market research/insights or demonstrated ability to lead an insights function. Must have experience in leading a team and in setting a change agenda. Experience in spirits or other image-based categories preferred.

In June, James asked Jowers if she was qualified for the Director of Insights role.[1] Jowers told James something to the effect of "I just don't see you in that role." Jowers reminded James that she did not need Jowers's approval to apply for the role. James did not submit an application for the Director of Insights position.

In September 2020, Jowers hired Anna Estlund as the Director of Insights. Estlund became James's direct supervisor. Estlund had been the Director of Insights, Media, and Engagement at Nestle Waters and had worked within its Insights department for many years. In that role, Estlund had worked in the four subdivisions of Insights, led a team of ten employees, built Insights systems, worked with executive-level officials, and supported employees she supervised through training and development plans.

In the summer of 2020, Jowers and James met to discuss James's performance review. James was rated as "Exceeds Expectations." Jowers praised James's commitment to her projects and her collaboration with her team but wrote that

---

[1] Under its Career Progression Policy, Pernod "strongly recommend[s] that any employee have an open career dialogue with their line manager before submitting an application" to an internally advertised job posting. The policy does not require, however, that employees get "managerial endorsement" before applying to fill vacancies.

4

she'd like to see James "shift from a brand-view to a portfolio-and-company view to be able to make bigger decisions."

In the following months, Jowers discussed with others at Pernod opportunities for James to broaden her experience. James declined two offers to move to other positions. For example, in February 2021, James declined the opportunity to work as the Senior Manager of Insights for Pod 3, which handled Pernod's champagnes and prestige spirits. The job would have been a lateral move for James. In May 2021, James declined the opportunity to work on the company's Matrix Program, which would have required her to report to the Director of Analytics Transformation. The Matrix Program involved working across Pernod's entire portfolio to create machine learning algorithms with Pernod's Paris headquarters and included exposure to senior levels of Pernod leadership.

James did accept, however, one of the opportunities Pernod offered her. In February 2021, Jowers and Estlund agreed that James should have an opportunity to participate in the 360 Review Program, which is a career development tool used at Pernod to increase a participating employee's awareness of their development by soliciting anonymous feedback from other employees about their work. James confirmed that she would like to participate in the 360 Review Program.

5

In February 2021, however, James also shared her dissatisfaction with Pernod. In a meeting with the Human Resources department in February, James expressed her disappointment that she had not yet been advanced to a director position at Pernod. James also raised general concerns about the treatment of African Americans at Pernod but did not mention any specifics.

James hired an attorney in early 2021 and recorded a call with the Human Resources department on February 25. James said that she had reached a tipping point and that African Americans were not given a fair chance to succeed at Pernod. In the call, James raised an incident of cultural insensitivity and bias in 2017[2], that she had once been called aggressive in 2017[3], Pernod's consideration of a Jameson Black Barrel slogan in 2019[4], and the promotion of employees who were not African American. James also complained about an advertisement for Absolut Vodka ("Absolut Ad") that was under consideration but had not yet been publicly released. The Absolut Ad was for watermelon-flavored

---

[2] James reported that in 2017, she attended a meeting in which a Pernod executive mocked how Black people speak.

[3] James reported that in 2017, she was told that a co-worker had complained that her feedback on a marketing research project was too aggressive.

[4] James reported that in 2019, she had objected that a slogan Pernod was considering for Jameson Black Barrel was racially insensitive.

6

vodka and included imagery of a Black woman holding a piece of watermelon over her face. Unbeknownst to James, Pernod had already decided not to use the ad.

In August 2021, James raised one additional concern about racial bias at Pernod. An outside consultant had created a short-form survey, called a typing tool. The typing tool included "AfAm/Black – non-Latinx" as a variable. On August 24, James emailed Jowers about her concerns with this proposed binary variable. James wrote that she wanted to "better understand how African American ethnicity was used as a defining variable in these instances while we do not see this for any other ethnic group." Jowers responded later that day that James was "bringing up an important question" and that she wanted to have a call with James and others about these "demographic skews." James left for a vacation before these discussions were concluded.

Around this time, James was applying to positions outside of Pernod. On August 10, Beam Suntory offered James the position of Director, Global Consumer Insights. James accepted the offer on August 11. On September 16, James submitted her notice to Pernod and stated that her last day would be September 17.[5]

---

[5] The notice is styled as a "notice of constructive discharge."

Procedural History

James filed the complaint in this action on December 16, 2021. She alleged that Pernod discriminated and retaliated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e et seq. ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), the New York State Human Rights Law, Executive Law §§ 290 et seq. (the "NYSHRL"), and the New York City Human Rights Law, the Administrative Code of the City of New York §§ 8-107 et seq. (the "NYCHRL"). Discovery concluded on December 3, 2022.

Pernod moved for summary judgment on December 16. In support of its motion, Pernod includes declarations from four individuals, including Jowers and Estlund, along with excerpts from the plaintiff's deposition and various documents. In her opposition, James relies on her declaration, excerpts from her deposition, and certain documents. The motion was fully submitted on February 3, 2023.

## Discussion

Summary judgment may only be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury

8

could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). Material facts are facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted).

In considering a motion for summary judgment, a court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted). In the context of employment discrimination, "an extra measure of caution is merited" in granting summary judgment because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted); see also Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 74 (2d Cir. 2016). Nonetheless, "[e]ven in the discrimination context a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014) (citation omitted).

Pernod has moved for summary judgment on all of James's claims.  James opposes entry of summary judgment on only one theory: Pernod's failure to promote her in 2020 to the Director

of Insights position due to her race, in violation of § 1981, the NYSHRL, and the NYCHRL. She does not oppose Pernod's motion for summary judgment on her other claims.

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). Under § 1981, a plaintiff must demonstrate that "race was a but-for cause of [her] injury." Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1014 (2020).

For a claim of employment discrimination under § 1981, courts apply "the familiar burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973)." Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013). To establish a prima facie case of discrimination, a plaintiff need only demonstrate: "(1) that she is a member of a protected class, (2) that she was qualified for the position . . ., (3) that she suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015).

When the adverse employment action is a failure to promote, a plaintiff must show that

> (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.

Aulicino v. N.Y.C. Dep't of Homeless Servs., 580 F.3d 73, 80 (2d Cir. 2009) (citation omitted). "A specific application [to the position] is required to ensure that, at the very least, the plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer." Petrosino v. Bell Atl., 385 F.3d 210, 227 (2d Cir. 2004) (citation omitted). Exceptions to this requirement are narrow. Id. "[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." Id.

"[A] showing that the employer treated plaintiff less favorably than a similarly situated employee outside her protected group is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted). The plaintiff must demonstrate that

"she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Id. (citation omitted). "The plaintiff's and comparator's circumstances must bear a reasonably close resemblance, but need not be identical." Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) (citation omitted).

"If the plaintiff establishes a prima facie case, a presumption of discriminatory intent arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its policy or action." Lenzi v. Systemax, Inc., 944 F.3d 97, 107 (2d Cir. 2019) (citation omitted). "If the employer puts forth a legitimate, non-discriminatory justification, the presumption drops out of the analysis and the plaintiff must establish, by a preponderance of the evidence, that the employer's justification is a pretext for discrimination." Id. at 107-08 (citation omitted).

Discrimination claims brought under the NYSHRL are "analytically identical" to Title VII claims. Id. at 107 n.7. Accordingly, under the NYSHRL, a plaintiff must "show that the motive to discriminate was one of the employer's motives, even if the employer had other, lawful motives that were causative of the employer's decision." Id. at 107 (citation omitted).

Claims brought under the NYCHRL are analyzed using the same framework as Title VII and NYSHRL claims, Leibowitz v. Cornell

12

Univ., 584 F.3d 487, 498 n.1 (2d Cir. 2009), but "must be reviewed independently from and more liberally than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (citation omitted). The NYCHRL does not require that a plaintiff prove an adverse employment action. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 114 (2d Cir. 2013). Rather, "the plaintiff need only show differential treatment -- that she is treated 'less well' -- because of a discriminatory intent." Id. at 110. Nonetheless, "district courts must be mindful that the NYCHRL is not a general civility code." Id. (citation omitted). Accordingly, the plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive." Id.

In its motion for summary judgment on James's failure to promote claim, Pernod principally argues that there is no adverse employment action because James never submitted an application for the Director of Insights position, that James has not offered evidence to support an inference of discriminatory motive, and that James has failed to offer evidence of pretext. The defendant's motion for summary judgment is granted. It may be granted on the sole ground that James did not apply for the position of Director of Insights. But, even if it is assumed that James's conversation with Jowers constitutes a sufficiently concrete step to support a failure to

promote claim, James has failed to present evidence to raise an inference of discrimination.

James has offered no direct evidence of discrimination. For instance, she has offered no evidence that any person involved in the decision to hire Estlund ever said anything racially derogatory. In support of her claim, James points to isolated incidents of racial bias and insensitivity in 2017, 2019, and 2021, each involving different individuals. None of the incidents occurred in 2020 and none are related to Pernod's hiring of a Director of Insights in 2020. This patchwork of events is not enough to show that race was the but-for cause of or a motivating factor in Jowers not promoting James to the position of Director in 2020. The incidents to which James points do not create an inference of discriminatory motivation in the appointment decision by either Pernod or any person at Pernod acting as a decision-maker in that appointment decision.

Jowers, of course, did not even join Pernod until 2020, and the only incident to which James points as related to discriminatory animus and in which Jowers participated is Pernod's consideration in August 2021 of a race-based variable proposed by its consultant that might be used in the typing tool. The discussions of this variable were ongoing at the time James left Pernod, and it provides no basis to infer racial bias on the part of Jowers in the 2020 hiring decision.

14

Even under the NYCHRL, James has not presented admissible evidence to establish that she was treated less well in the 2020 hiring decision than non-African American employees due to her race. There is nothing in the record to raise a question of fact that Jowers was motivated by race when she hired Estlund instead of promoting James.

Even if James had met her prima facie burden, James has not presented evidence to raise a question of fact that Jowers's reasons for not promoting James were pretextual. Jowers has explained that she did not believe James was qualified for the role because James had little leadership experience, had primarily worked only in "brand" insights, and then had focused principally on "well-established key brands with established strategies." The record supports Jowers's evaluation. Prior to working at Pernod, James had only supervised a team of three people briefly. While at Pernod, she led U.S. market research at the beginning of her employment, but otherwise spent her time at Pernod focused on brand insights. James does present evidence, for example, that she had worked in the other divisions of Insights or that she had varied experience with different brand strategies.[6]

---

[6] James notes that she worked on "brown spirits" at the beginning of her employment but never defines which brands fell under this term.

Moreover, it is undisputed that Estlund was a highly experienced applicant and was more experienced in the relevant areas than James. Estlund had supervised a team of ten employees, had worked in all four subdivisions of Insights, and had built company-wide Insights systems. Estlund had the qualifications that Jowers was looking for in a Director of Insights and had more of the experience that Pernod identified as relevant than James. A company is entitled to set its own expectations for its employees' qualifications. See Sassaman v. Gamache, 556 F.3d 307, 314 (2d Cir. 2009).

James makes several arguments in opposing this motion, but none of them is persuasive. To support her claim of discriminatory motive, James identifies Pernod employees who are not African American and who were hired or promoted into Insights' roles with, in James's view, little to no relevant experience. James, however, does not suggest that she applied for any of these positions and offers no evidence that any other African American did either. These references to other promotion and hiring decisions does not, therefore, support an inference of discrimination.

James identifies three African Americans whose jobs were eliminated in 2021 when the marketing department was reorganized. James has not offered admissible evidence regarding the reorganization, however, to allow a fact finder to

16

infer that Pernod acted with discriminatory intent in 2021, much less to connect that discrimination to the 2020 failure to promote James to the position of Director.

James next argues that the reasons Jowers has given for finding James not qualified for the position of Director were pretextual. While Jowers declares that James had primarily worked on well-established brands within Insights, James points out that she had some experience working in areas outside of particular brands. Although James led U.S. market research at the beginning of her employment with Pernod, it is not disputed that the bulk of her time at Pernod was focused on the marketing of certain major brands.[7]

Second, James argues that certain qualities that Jowers testified that she was looking for in a Director of Insights were not included in the job posting. To the contrary, the job posting encompassed each of the qualities that Jowers mentioned in her declaration filed in support of this motion for summary judgment.

In sum, James has failed to present evidence that discrimination played a role in Jowers's decision not to promote

---

[7] Indeed, James's previous manager also observed James's focus on her particular brands. A 2019 performance review noted that there was an opportunity for James to work with other Pernod employees "to ensure that she is able to influence projects outside of the Power Brands Team."

17

James to the Director of Insights position. Jowers hired an applicant for the position who had the qualifications Jowers was looking for and who had significantly more experience than James. Because James has not identified any evidence to suggest that discrimination motivated Jowers's decision or that Jowers's justification for hiring Estlund was pretextual, Pernod is entitled to summary judgment on James's § 1981, NYSHRL, and NYCHRL claims.

## Conclusion

The defendant's December 16, 2022 motion for summary judgment is granted. The Clerk of Court shall enter judgment for the defendant and close the case.

Dated:   New York, New York
         April 13, 2023

                                    _____
                                            DENISE COTE
                                    United States District Judge